State v. Terry's Tips, No. 560-9-05 Wncv (Toor, J., Nov. 16, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| STATE OF VERMONT,<br> Plaintiff<br><br> v.<br><br>TERRY'S TIPS, INC.  and<br>TERRY  F. ALLEN,<br> Defendants | SUPERIOR COURT<br>Docket No. 560-9-05 Wncv |

RULING ON MOTION TO ENFORCE, MOTION

TO STAY AND MOTION FOR HEARING

This action was filed by the Commissioner of Banking, Insurance, Securities and Health Care (the Commissioner) to enforce an administrative subpoena issued by the Commissioner in connection with an investigation of an alleged unregistered internet investment advisor. In response to the Commissioner's motion, Defendants have filed a motion to stay this proceeding until resolution of a related federal proceeding, and have requested a hearing for the purpose of cross-examining the Commissioner's investigator.

Background Facts

The subpoenas in question are directed to Terry's Tips, Inc., and Terry Allen (jointly "Allen"). They operate a website, TerrysTips.com. They concede that they "publish newsletters,

commentary and trading recommendations for option transactions" on the website. Motion to Stay Proceedings, p. 1. In addition, their website reflects menu options for, among other things, "Sign Up For Paid Services" and "Auto-Trade." Affidavit of Tanya Durkee, Exhibit C. There are also obviously questionable claims made on the website for returns such as "196.5% profit" in a single year. Id.

The Commissioner has served the subpoenas in connection with its power to investigate possible violations of the Vermont Securities Act, 9 V.S.A. §§ 4201- 4241. It is a violation of the Act to provide investment advice without being registered with the State. Id. § 4213(f)(1). One who "for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities, or as to the advisability of investing in, purchasing, or selling securities," is an investment advisor. Id. § 4202a(7)(A). The Act excludes from this definition "a publisher of any bona fide newspaper, news column, newsletter, news magazine, or business or financial publication or service, whether communicated in hard copy form, by electronic means, or otherwise, that does not consist of the rendering of advice on the basis of the specific investment situation of each client." Id. § 4202a(B)(v).

The Act does more than require registration by investment advisors. It also prohibits fraud by registered or unregistered persons who make misleading statements in the course of providing paid advice as to the value of securities. Id. § 4224a(a) and (e).

The Commissioner is given the power to investigate possible violations of the Act, including issuing subpoenas the Commissioner "considers to be relevant and material to the investigation or proceeding." Id. § 4232(b). When a person fails to comply with a properly issued

subpoena, this court is directed to "issue an order compelling compliance with the agency subpoena." 3 V.S.A. § 809a(d).

The subpoenas in question contain twenty-nine requests for information, including such things as lists of subscribers, the amounts they each invested in the specific "Strategies" offered by Allen, the income received from auto-trading clients, and documentation backing up some of the claims made on the website about investment returns. Affidavit of Tanya Durkee, Exhibits A and B.

The only information provided by Allen as to the work involved in responding to the subpoenas is the conclusory statement that compliance "would be extremely onerous and burdensome" and would require "substantial time and resources." Affidavit of Terry Allen, ¶ 5.

### 1. The Motion to Stay

The basis for the motion to stay is as follows. Allen argues that the Commissioner lacks jurisdiction because Allen is a publisher rather than an investment advisor, and that this issue is also being litigated in pending federal proceedings brought by the federal Securities and Exchange Commission (SEC). Allen argues that this court should therefore wait for the federal court to rule on the jurisdictional issue before proceeding.

This court declines the suggestion. Despite this court's respect for its colleagues on the federal bench, the federal court and this court could well reach different conclusions in interpreting the law. The federal court's decision would not be controlling in this court. There is no reason to stay this case to await a decision in that case. The motion to stay is therefore denied.

### 2. The Jurisdictional Issue

Allen argues that the Commissioner lacks jurisdiction over Allen because Allen is a newsletter publisher as opposed to an investment advisor, and the Vermont Securities Act

excludes such newsletter publishers from its reach. 9 V.S.A. § 4202a(B)(v). That, however, is an issue for another day. While there might be cases that could be easily resolved at this stage of the proceedings -- for example, if the subpoena in this case were directed to what was clearly a grocery store or some other business that on its face was not within the scope of the statute. On its face, the excerpts from the website raise a fair inference that this case is within the realm addressed by the statute. For example, the menu choices at the website include "Sign Up For Paid Services" and "Auto-Trade." Affidavit of Tanya Durkee, Exhibit C. The merits of any case the Commissioner later chooses to file may turn on developing the facts further, but at this stage in the process, the court will not delve into the fact-bound determination of whether any such case may ultimately succeed.[1]*Accord*, United States v. Construction Products Research, Inc., 73 F.3d 464, 470 (2d Cir. 1996)("at the subpoena enforcement stage, courts need not determine whether the subpoenaed party is within the agency's jurisdiction or covered by the statute it administers; rather the coverage determination should wait until an enforcement action is brought against the subpoenaed party."); Federal Trade Commission v. Ernstthal, 607 F. 2d 488, 490 (D.C. Cir. 1979)(where jurisdictional question "turns on issues of fact, the agency is not obliged to prove its jurisdiction in a subpoena enforcement proceeding").

Although Allen argues that First Amendment considerations require the court to step in at this stage, the court finds the cited cases inapposite because they relate to political association rights, not commercial situations. *See* Federal Election Commission v. Larouche Campaign, 817 F.2d 233 (2nd Cir. 1987); Federal Election Commission v. Machinists Non-Partisan Political League, 655 F.2d 380 (D.C. Cir. 1981); Federal Election Commission v. Philips Publishing, Inc., 517 F.Supp. 1308 (D.D.C. 1981). As the D.C. Circuit noted in Machinists, the political activities

---

[1] If the issue were to be litigated at this stage, the Commissioner would be entitled to discovery on the issue. That discovery would likely mirror the requests in the subpoenas.

overseen by the Federal Election Commission "differ in terms of their constitutional significance from those which are of concern to other federal administrative agencies whose authority relates to the regulation of corporate, commercial or labor activities." 655 F.2d at 387. There is no need for heightened scrutiny of administrative subpoenas in the realm of commercial activities alone.

The court will grant the Commissioner the deference that administrative subpoenas are generally accorded. *See, e.g.*,  United States v. Morton Salt Co., 338 U.S. 632, 652 (1950)(subpoenas will be upheld if within the agency's authority, "not too indefinite," and reasonably relevant); In re McVane, 44 F.3d 1127, 1134-1136 (2nd Cir. 1995)(same). The investigation of potential unregistered investment advice, and of fraudulent investment information, are clearly within the general scope of the Commissioner's authority. The subpoenas contain specific, definite requests for information.  Allen has not even argued that they are not relevant to the Commissioner's investigation. Thus, the subpoenas are entitled to deference.

### 3. The Scope of the Subpoenas

Allen argues that the subpoenas in this case are overbroad: "They consist of three and a half pages of single spaced requests, and seek virtually every piece of paper and computer file for [Allen's] business, and in some cases cover a period of five years. The subpoenas are thus burdensome, oppressive and unreasonable, and are invalid for this reason alone." Opposition to Motion to Enforce, p. 7. The court disagrees. The mere fact that the subpoenas are several pages long and ask for many records does not make them unreasonable. Allen gives no estimate of the number of pages of responsive records, the number of hours responses will take, or any other specific information that might affect the reasonableness of the request. It could be that many of

the twenty-nine requests could be answered by the production of merely a few pages, for example. Nothing on the face of the subpoenas makes them patently unreasonable.

Allen goes on to argue that the subpoenas are also unreasonable because they are "extremely intrusive with respect to [Allen's] right to publish, as well as on their subscribers' rights to read the publications without being subjected to government scrutiny." Opposition at 7. The only authority offered for this argument is Lowe v. Securities and Exchange Commission, 472 U.S. 181 (1985). However, Lowe merely addresses the distinction between a publisher and an investment advisor. The case involved whether enforcement action could be taken against a particular entity – it did *not* involve the issuance of an administrative subpoena. Lowe does not require that a court make the determination of a statute's applicability to a particular entity at the investigation stage.

As noted above, whether Allen fits within the "investment advisor" definition is an issue for another day. The web site itself suggests that Allen does provide investment advice, and that impossible claims are being made as to investment returns. These are sufficient grounds for the Commissioner to seek further information. Lowe did not say that by merely claiming the status of publisher, a party may insulate itself from investigation.[2]

#### 4. The Request for a Hearing

Allen argues that a hearing is necessary so that Allen can cross-examine the Commissioner's investigator. The reasons stated for doing so are to determine whether the Commissioner has issued the subpoenas for an "improper purpose." Opposition at 8. Allen

---

[2] Moreover, to the extent that Allen is suggesting that the court should be concerned with the privacy rights of subscribers or investors, this court agrees with the following comment by another court: "It is common knowledge that securities transactions are heavily regulated by both the state and federal governments. An investor in regulated securities has no reasonable expectation that his or her identity will be withheld from the state and federal agencies responsible for enforcing securities laws." Tom v. Schoolhouse Coins, Inc., 236 Cal. Rptr. 541, 542 (Cal. Ct. App. 1987).

argues that the timing and content of the subpoenas suggests an improper motive. The "timing" to which Allen refers is that the subpoenas were issued after Allen filed a motion to dismiss in the federal case. The "content" to which Allen refers is not explained, although the suggestion apparently is that because the federal government is also investigating similar issues, there is something fishy about the State also doing so.

The court finds the argument unconvincing. There is nothing inappropriate about both federal and state entities investigating similar issues under their respective laws, nor is there any evidence proffered that the Commissioner is somehow providing to the SEC information the SEC would not be able to obtain itself. Nor is any authority cited to suggest that sharing such information would be improper. Allen offers no legitimate basis for inferring that the Commissioner is doing anything inappropriate. The court will not grant an evidentiary hearing based on Allen's mere speculation.

Order

The Commissioner's motion to enforce is granted. The respondents' motions to stay and motion for an evidentiary hearing are denied.

Dated at Montpelier this 15th day of November, 2005.

_____
Helen M. Toor
Superior Court Judge